IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Case No.  1:18-cv-01356 (RC) |

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant United States Department of Justice respectfully moves for summary judgment.  The reasons for this motion are set forth in the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, Defendant's Statement of Material Facts as to Which There is No Genuine Issue, as well as the Declarations of David M. Hardy, Vanessa R. Brinkmann (and the exhibits thereto), and John E. Cunningham III (and the exhibits thereto).  A proposed order is filed herewith.

Dated:  October 7, 2019

Respectfully submitted,

HASHIM MOOPPAN
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

/s/ Andrew M. Bernie
ANDREW M. BERNIE (DC Bar No. 995376)
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 616-8488 | Fax: (202) 616–8470
andrew.m.bernie@usdoj.gov

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., | |
| Plaintiff, | |
| v. | Case No.  1:18-cv-01356 (RC) |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7(h)(1), Defendant respectfully submits the following statement of material facts as to which there is no genuine issue:

1.      In a letter dated December 15, 2017, Judicial Watch, Inc. ("Plaintiff") submitted a Freedom of Information Act ("FOIA") request ("FOIA Request") to the Department of Justice ("Department") seeking the following:

> "1. Any and all text messages sent to or from DOJ official Andrew Weissmann regarding Donald Trump and/or Hillary Clinton between August 8, 2016 and the present."  ["part one"]
> "2. Any and all calendar entries, whether in physical or electronic form, for DOJ official Andrew Weissmann from January 1, 2015 to the present."  [part two"]

Declaration of Vanessa Brinkmann ("Brinkmann Decl.") ¶ 4; ECF No. 1 ("Compl.") ¶ 5.

2.      Mr. Weissmann worked in the Department's Criminal Division until June 2017, when he joined the Special Counsel's Office ("SCO") formed to conduct the investigation concerning Russian interference in the 2016 Presidential election.  Brinkmann Decl. ¶ 11.

3.    To locate records responsive to part one of the FOIA Request, Mr. Weissmann took screenshots of every text message sent or received by his Department-issued phone, which were then provided to the Department's Office of Information Policy ("OIP").  Brinkmann Decl. ¶ 12.

4.    In total, five text messages were located as a result of this search of Mr. Weissmann's Department-issued phone, all of which OIP provided to Plaintiff with certain material withheld pursuant to Exemptions 6 and 7(C) of FOIA regardless of whether they were responsive to the FOIA Request.  Brinkmann Decl. ¶ 12.

5.    As to part two of Plaintiff's FOIA Request, OIP confirmed with Mr. Weissmann that he maintained only one calendar during his time at the SCO, the electronic Microsoft Outlook calendar on his computer.  Brinkmann Decl. ¶ 13.

6.    An OIP official saved all Outlook calendar entries dating from Mr. Weissmann's time at the SCO as PDF files, which OIP processed.  Brinkmann Decl. ¶ 13.

7.    As a result, OIP located 71 pages containing records responsive to Plaintiff's request.  Brinkmann Decl. ¶ 15.

8.    The Criminal Division requested and received Mr. Weissmann's Outlook calendar entries from January 1, 2015 (the beginning date specified in the FOIA Request) to January 31, 2018 (more than seven months after Mr. Weissmann went to the SCO), and processed the resulting material.  Declaration of John E. Cunningham III ("Cunningham Decl.") ¶¶ 9-11.

9.    As a result, the Criminal Division located 162 pages containing records responsive to the FOIA Request, consisting of calendar entries, which start on the date of December 29, 2014, and end on the date of February 4, 2018.  Cunningham Decl. ¶ 11.

10.     On June 7, 2018, Plaintiff filed suit in connection with this FOIA Request, asserting a violation of FOIA for failing to produce the requested records or otherwise reach a final determination on its request.  Compl. ¶¶ 8-12.

11.     The Complaint also requests a waiver of fees but, since no fees were assessed, that request is now moot.  *See* Brinkmann Decl. ¶ 4 n.1.

12.     On May 2, 2019, the Criminal Division provided its response to Plaintiff's FOIA Request, consisting of 162 pages.  Cunningham Decl. ¶ 12 & Ex. 2.

13.     The Criminal Division released 37 pages in full and released 125 pages in part, redacting portions of certain pages pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E) of the FOIA.  *Id.*

14.     On May 7, 2019 OIP provided its response to Plaintiff's FOIA Request, informing Plaintiff that it was releasing all 71 pages with certain material withheld pursuant to FOIA Exemptions 5, 6, 7(A), 7(C), 7(D), and 7(E).  Brinkmann Decl. ¶ 7 & Ex. C.

15.     On October 7, 2019 OIP provided a supplemental response to the FOIA Request, explaining that the passage of time had allowed it to lift certain privacy and Exemption 7(A) redactions.  Brinkmann Decl. ¶ 8.

16.     In that supplemental release, OIP produced updated versions of the 71 pages of calendars and text messages to Plaintiff.  Brinkmann Decl. ¶ 8 & Exs. D-E.

17.     Before the responsive materials were released to Plaintiff, OIP and the Criminal Division referred all the processed calendar entries to the Federal Bureau of Investigation ("FBI"), which made certain redactions pursuant to FOIA Exemptions 6, 7(A), 7(C), and 7(E).  *See* Declaration of David M. Hardy ("Hardy Decl.") ¶ 4.

18.     The Brinkmann Declaration, Hardy Declaration, and Cunningham Declaration, as well as the exhibits to the Brinkmann and Cunningham Declarations (including the *Vaughn* index included as an exhibit to the Brinkmann Declaration, and the *Vaughn* index included as an exhibit to the Cunningham Declaration) justify and set forth the basis for the Department's withholdings pursuant to applicable FOIA exemptions.  *See* Brinkmann Decl. ¶¶ 15-68 & Ex. F; Hardy Decl. ¶¶ 5-23; Cunningham Decl. ¶¶ 12-28 & Ex. 1.

19.     The Department released all reasonably segregable information to Plaintiffs. Hardy Decl. ¶ 24; Brinkmann Decl. ¶ 69; Cunningham Decl. ¶ 29.

Dated:  October 7, 2019                    Respectfully submitted,

                                           HASHIM MOOPPAN
                                           Deputy Assistant Attorney General

                                           ELIZABETH J. SHAPIRO
                                           Deputy Director
                                           Federal Programs Branch

                                           /s/ Andrew M. Bernie
                                           ANDREW M. BERNIE (DC Bar No. 995376)
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, NW
                                           Washington, DC 20005
                                           Tel: (202) 616-8488 | Fax: (202) 616–8470
                                           andrew.m.bernie@usdoj.gov

                                           *Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUDICIAL WATCH, INC., <br><br>               Plaintiff, <br><br>     v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br>               Defendant. | Case No.  1:18-cv-01356 (RC) |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

This action concerns a Freedom of Information Act ("FOIA") request by Plaintiff Judicial Watch, Inc. ("Plaintiff") to Defendant U.S. Department of Justice ("Defendant" or "Department") for records of certain text messages and calendar entries of former Department of Justice official Andrew Weissmann.  In response to that request, the Department conducted an adequate search and released all responsive, non-exempt, reasonably segregable information but properly withheld certain information under FOIA Exemptions 5, 6, 7(A), 7(C), 7(D), and 7(E). Defendant has therefore fully complied with its obligations under FOIA and is entitled to summary judgment.

## BACKGROUND

On May 17, 2017, former FBI Director Robert S. Mueller III was named as Special Counsel to oversee the investigation concerning Russian interference in the 2016 Presidential election.  Office of the Deputy Attorney General, Order No. 3915-2017 (May 17, 2017), https://www.justice.gov/opa/press-release/file/967231/download.  The Special Counsel's Office ("SCO"), was staffed by DOJ prosecutors including Mr. Weissmann, as well as FBI agents. Declaration of Vanessa R. Brinkmann ("Brinkmann Decl.") ¶ 22.

In a letter dated December 15, 2017, Plaintiff submitted a FOIA request to the Department of Justice seeking the following:

> "1. Any and all text messages sent to or from DOJ official Andrew Weissmann regarding Donald Trump and/or Hillary Clinton between August 8, 2016 and the present.

> "2. Any and all calendar entries, whether in physical or electronic form, for DOJ official Andrew Weissmann from January 1, 2015 to the present.

Brinkmann Decl. ¶ 4; ECF No. 1 ("Compl.") ¶ 5. Mr. Weissmann joined the SCO in June 2017, taking a leave of absence from the Department's Criminal Division ("Criminal Division") where he previously worked. Brinkmann Decl. ¶ 11.

Plaintiff's request was originally directed to the Criminal Division, but was routed to the Department's Office of Information Policy ("OIP") on January 4, 2018. Brinkmann Decl. ¶ 4. OIP is the Department's component responsible for processing FOIA requests seeking records from certain Department leadership offices, as well as the relevant records of the SCO. *Id.* ¶ 1. The Department acknowledged receipt of the request by letters dated January 2, 2018 and February 2, 2018. Brinkmann Decl. ¶ 5; Compl. ¶ 6.

On June 7, 2018, Plaintiff filed suit in connection with this FOIA request, asserting a violation of FOIA for failing to produce the requested records or otherwise reach a final determination on its request. Compl. ¶¶ 8-12. The Complaint also requests a waiver of fees in the December 15, 2017 letter but, since no fees were assessed, that request is moot. *See* Brinkmann Decl. ¶ 4 n.1.

On May 2, 2019, the Criminal Division provided its response to Plaintiff's FOIA request, consisting of 162 pages, redacting certain pages pursuant to Exemptions 5, 6, 7(C), and 7(E) of the FOIA. Declaration of John E. Cunningham ("Cunningham Decl.") ¶ 12 & Ex. 2. On May 7,

2019 OIP provided its response to Plaintiff's FOIA request, informing Plaintiff by letter that 71 pages containing records responsive to Plaintiff's request were located (66 pages of calendars and 5 pages of text messages) and that it was releasing all 71 pages with certain material withheld pursuant to Exemptions 5, 6, 7(A), 7(C), 7(D), and 7(E) of the FOIA.  Brinkmann Decl. ¶ 7.  On October 7, 2019, OIP provided a supplemental response to the FOIA request, explaining that the passage of time had allowed it to lift certain privacy and 7(A) redactions.  *Id.* ¶ 8 & Exs. D-E.  In that supplemental release, OIP produced updated versions of the 71 pages of calendars and text messages to Plaintiff.  *Id.*

In addition, both of Mr. Weissmann's departmental positions during the time period encompassed by the FOIA request—as the Chief of the Fraud Section of the Criminal Division and as a prosecutor in the SCO—are law enforcement positions and both include information related to the role of the Federal Bureau of Investigation ("FBI"), and the roles of its employees in the SCO investigation and in related investigations.  *See* Declaration of David M. Hardy ("Hardy Decl.") ¶¶ 4-8.  Accordingly, OIP and CRM referred all the processed calendar entries to the FBI, which made its own redactions.  Those redactions are set forth in the *Vaughn* index included with the Brinkmann and Cunningham declarations (which indicates which exemptions were taken by the FBI) and the Hardy Declaration (which explains the basis for these exemption claims).  *See* Cunningham Decl. Ex. 1; Brinkmann Decl. Ex. F.

## LEGAL STANDARD

Summary judgment is appropriate when a party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" as to a claim or defense.  Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute regarding a material fact, which is a fact "that might affect the outcome of the suit." *Id.* at 248.

## ARGUMENT

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 133 (D.D.C. 2013) (quoting *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012)).  To succeed on summary judgment, "[t]he defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013).  Because the Department's declarations and supporting materials show that all three of these requirements are satisfied, the Court should grant Defendant's motion for summary judgment.

### I.   The Department Conducted an Adequate Search for Documents

A search is adequate if "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The adequacy of a FOIA search is thus gauged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).

"In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Steinberg v. DOJ*, 23 F.3d 548, 551

(D.C. Cir. 1994) (quoting *Weisberg v. Dep't. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). This standard does not require that "the affidavits of the responding agency set forth with meticulous documentation the details of an epic search for the requested records." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). "Rather, in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice . . . ." *Id.* Moreover, "[s]uch agency affidavits attesting to a reasonable search 'are afforded a presumption of good faith,' and 'can be rebutted only with evidence that the agency's search was not made in good faith.'" *Riccardi v. U.S. Dep't of Justice*, 32 F. Supp. 3d 59, 63 (D.D.C. 2014) (quoting *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004)).

The FOIA request in this case sought two discrete categories of information—text messages sent to or from Mr. Weissmann regarding President Trump and/or Hillary Clinton from August 8, 2016 to the present, and Mr. Weissmann's calendar entries from January 1, 2015 to the present. As to text messages, Mr. Weissmann took screenshots of every text message sent or received by his Department-issued phone, and provided the screenshots to OIP. Since there were only five text messages, OIP released all of them to Plaintiff regardless of whether they were responsive (with redactions pursuant to Exemptions 6 and 7(C)). Brinkmann Decl. ¶ 12. OIP also confirmed with Mr. Weissmann that he maintained only one calendar, the electronic Microsoft Outlook calendar on his computer. *Id.* ¶ 13. An OIP official then saved all calendar entries dating from Mr. Weissmann's time at the SCO as PDF files, which it processed. *Id.*

As to Mr. Weissmann's Criminal Division service, the Criminal Division likewise requested (and received) Mr. Weissmann's Outlook calendar entries from January 1, 2015 (the beginning date specified in the FOIA request) and January 31, 2018 (more than seven months

after Mr. Weissmann went to the SCO), and processed the resulting material.  Cunningham Decl. ¶¶ 9-11.

Given the relatively straightforward nature of the search for responsive records in this case, the thoroughness of the search and review, as well as the search's success, there is no basis on which to question the search's adequacy.  Defendant is entitled to summary judgment on this issue.

## II.    The Department Has Properly Withheld Information Under Applicable Exemptions

The FOIA represents a balance struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).  Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused."  *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  Although these exemptions are to be "narrowly construed," *id.* at 630, courts must not fail to give them "meaningful reach and application," *John Doe*, 493 U.S. at 152.  Indeed, FOIA's "exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement" and "just as [courts] cannot properly *expand* Exemption 4 beyond what its terms permit, [they] cannot arbitrarily *constrict* it either by adding limitations found nowhere in its terms."  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (cleaned up).

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit."  *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009).  "[S]ummary judgment is warranted on the

basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374-75 (citation omitted).

The Brinkmann, Cunningham, and Hardy declarations submitted with Defendants' motion and the *Vaughn* indices accompanying the Brinkmann and Cunningham declarations provide detailed justifications for the surgical redactions to the responsive calendar entries. The Department is accordingly entitled to summary judgment with regard to its application of exemptions, the specifics of which are explained further below.

### A.     The Department Properly Withheld Information Pursuant to Exemption 5

Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As the Brinkmann Declaration explains, the responsive calendar entries all qualify as inter-agency or intra-agency for purposes of this Exemption, because they were all generated by, and remain wholly internal to, the Executive Branch. Brinkmann Decl. ¶ 17; *see also* Cunningham Decl. Ex. 1 at 1 (noting that calendar entries are "intra-agency records"); *id.* ¶ 14.

As relevant here, among the privileges protected by Exemption 5 are the deliberative process privilege and the attorney work-product privilege.

The deliberative process privilege is uniquely available to the government. *See Rockwell Int'l Corp. v. Dep't of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001). The deliberative process privilege applies to "decisionmaking of executive officials generally," and protects documents

containing deliberations that are part of the process by which government decisions are formulated. *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997). The purpose of the deliberative process privilege is to encourage full and frank discussion of legal and policy issues within the government, and to protect against public confusion resulting from disclosure of reasons and rationales that were not ultimately the bases for the agency's action. *See, e.g.*, *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982). The privilege is animated by the common-sense proposition that "those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975) (citation omitted).

To come within the scope of the deliberative process privilege, a document must be both predecisional and deliberative. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is predecisional if "it was generated before the adoption of an agency policy," and it is deliberative if "it reflects the give-and-take of the consultative process." *Id.* "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1123 (D.C. Cir. 1989)). The privilege therefore applies broadly to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. When evaluating deliberative-process claims, courts "must give considerable deference to the agency's explanation of its decisional process, due to the agency's expertise in determining what

- 8 -

confidentiality is needed to prevent injury to the quality of agency decisions, while the decisionmaking process is in progress." *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) (citation omitted).

The attorney work-product privilege safeguards "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  The privilege applies to documents prepared in anticipation of litigation and "enables a lawyer to develop his mental impressions and legal theories without fear of having his adversaries rummage through them at leisure." *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 126 (D.C. Cir. 1987).

As the Brinkmann Declaration explains, OIP withheld information pursuant to the deliberative process and attorney work product privileges in twelve instances.  Brinkmann Decl. ¶ 17.  These entries "consist of deliberative discussions concerning ongoing prosecutions or investigations and often involved legal strategy sessions concerning these matters" (for the ten entries withheld pursuant to both the deliberative process and attorney work product privileges) and "would reveal details about how the Department was planning to respond to an inquiry, before a decision on the topic was made or a response or determination was issued" (for the remaining two).  *Id.* ¶ 21  Thus, "[t]he release of such information withheld in these twelve calendar entries would chill internal deliberations and impair the Department's ability to foster forthright, internal discussions necessary for efficient and effective Departmental decision-making." *Id.*

This information was properly withheld under the deliberative process privilege.  As Ms. Brinkmann explains, the withheld information was both predecisional and deliberative in that it concerns discussions about decisions in ongoing matters.  *Id.*  OIP's conclusion that release of

- 9 -

this material would chill internal deliberations is entitled to deference, *see Pfeiffer*, 721 F. Supp. at 340, and it is in any event obvious that public disclosure of the Department's communications concerning such matters would have "a chilling effect on free deliberation." *Judicial Watch of Fla., Inc. v. U.S. Dept. of Justice*, 102 F. Supp. 2d 6, 15 (D.D.C. 2000).

In addition, as Ms. Brinkmann explains, "[a]ll of the information withheld pursuant to the attorney work-product privilege was created by a Department attorney, Mr. Weissmann, in connection with various ongoing and/or prospective Department litigation proceedings." Brinkmann Decl. ¶ 19. "Specifically, OIP withheld the titles of ten calendar entries that relate to litigation strategy discussions involving Mr. Weissmann and others in SCO." *Id.* These ten calendar entries are thus also subject to withholding as attorney work-product.[1]

Similarly, the Criminal Division withheld certain calendar entries and portions thereof under the deliberative process privilege because they "concern meetings, briefings and strategy discussions for both ongoing and prospective litigation and/or investigative matters, and include case specific details related to business entities and/or named individuals as well as certain information related to their underlying investigation and/or prosecution." Cunningham Decl. ¶ 16. This information was likewise properly withheld under the deliberative process privilege. The information is predecisional because, as the *Vaughn* index accompanying Mr. Cunningham's declaration explains, releasing it "would reveal pre-decisional deliberations as to whether to prosecute a particular case, as well as which investigative strategies may be fruitful with regard to the conduct of the investigation." Cunningham Decl. Ex. 1 at 1. And it is deliberative in that such "discussions may include information related to the sufficiency of the

_____

[1] In the production to Plaintiff, OIP referenced only the deliberative process privilege but has determined that the attorney work product doctrine applies to this information as well.

evidence to initiate the investigation; what crimes to charge; which witnesses to interview; what records and documents to subpoena; and other possible avenues of investigation." *Id.* at 1-2; *see also* Cunningham Decl. ¶¶ 17-18 (providing further detail on the predecisional and deliberative nature of these withholdings). The Criminal Division's *Vaughn* index provides further detail, explaining—for each calendar entry in which information was withheld pursuant to Exemption 5—that the entry involves discussion of litigation matter(s) or related issues. This discussion of ongoing legal matters plainly falls within the deliberative process privilege. *See, e.g.*, *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) ("There can be no doubt that . . . legal advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale. . . ."). As the Criminal Division's *Vaughn* index further explains, these calendar entries are also subject to withholding as attorney work product "because they relate to meetings, discussions and strategy conferences involving an attorney in reasonable anticipation of litigation." Cunningham Decl. Ex. 1. at 1; *see also* Cunningham Decl. ¶¶ 19-20 (providing further detail).

Accordingly, the Department is entitled to summary judgment on its Exemption 5 withholdings.

**B.      The Department Properly Withheld Information Pursuant to Exemption 6 & 7(C)**

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599-600 (1982) ("[T]he primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters.") (citation omitted). For this exemption to apply, the

- 11 -

information at issue must be maintained in a government file and "appl[y] to a particular individual." *Id.* at 602.  Once this threshold requirement is met, Exemption 6 requires the agency to balance the individual's right to privacy against the public's interest in disclosure. *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

The balancing analysis required by Exemption 6 is similar to the balancing analysis required by Exemption 7(C), which authorizes withholding of records compiled for law enforcement purposes if their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  This exemption also requires the agency to balance the relevant individual privacy rights against the public interest in disclosure.  *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).  That said, the analysis under Exemption 7(C) tilts more in favor of nondisclosure. *See id.* at 756 (comparing statutory language of Exemption 6 and Exemption 7(C)); *Reed*, 927 F.2d at 1251 (explaining similarity of Exemption 6 analysis and Exemption 7(C) analysis).

"To fall within any of the exemptions under the umbrella of Exemption 7, a record must have been 'compiled for law enforcement purposes.'" *Pub. Emps. for Envtl. Responsibility v. Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)).  "According to the Supreme Court, the term 'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Id.* at 203 (citation omitted).  "If the agency's principal function is law enforcement" a court is "more deferential to the agency's claimed purpose for [] particular records." *Id.* (citation omitted).

Here, the Brinkmann, Hardy, and Cunningham Declarations establish that the information withheld pursuant to Exemption 7 (both the materials withheld pursuant to

Exemption 7(C) and those withheld pursuant to other sub-sections of Exemption 7) were compiled for law enforcement purposes. As Ms. Brinkmann explains, the responsive "records include Andrew Weissmann's calendars and text messages from his time as a prosecutor in the SCO." Brinkmann Decl. ¶ 22; *see also id.* (explaining scope and purpose of the SCO investigation). "Any records from Mr. Weissmann's time in the SCO were compiled in support of his fulfillment of that role, to conduct the aforementioned law enforcement investigation and related matters." *Id.* As to the Criminal Division calendars, Mr. Weissmann's role in the Criminal Division—Chief of the Fraud Section—is likewise a law enforcement position. Hardy Decl. ¶ 8; *see also* Cunningham Decl. Ex. 1 at 1 (noting that information withheld under Exemptions 7(A), 7(C), 7(D), and 7(E) was compiled for law enforcement purposes).

Courts broadly construe the privacy interests protected by Exemptions 6 and 7(C). *See Reporters Comm.*, 489 U.S. at 763 (noting that "privacy encompass[es] the individual's control of information concerning his or her person"). On the other hand, "the only relevant public interest in the . . . balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *DOD v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (citation omitted).

For the categories of information described below, the Department determined that the individual's interest in personal privacy outweighed any public interest in disclosure. Therefore, the information was properly withheld pursuant to Exemption 6 and, for some of the records, Exemption 7(C) as well.

*OIP withholdings* – The following categories of information were withheld by OIP in the OIP calendars:

- 13 -

**(b)(6)-1** – names and contact information of individuals being interviewed for a position at the SCO who were ultimately not hired by the SCO:  The first category of privacy-based withholdings pertains to individuals who were interviewed but not hired for positions with the SCO.  As Ms. Brinkmann explains, "disclosure of the identities of these individuals who sought employment with the SCO would certainly subject these individuals to unwarranted attention, harassment and potential harm, which gives rise to a significant privacy interest."  Brinkmann Decl. ¶ 38.  That is particularly obvious when one considers the "intense public interest surrounding the SCO's work, as well as the public, elected official, and media scrutiny, which occur when any new fact is made public."  *Id.*  Moreover, releasing these individuals' identities would not shed light on the SCO's work, or the work of the Department more broadly, in any meaningful sense.  *Id.* ¶ 39; *see also Voinche v. FBI*, 940 F. Supp. 323, 330 (D.D.C. 1996) ("Information that does not directly reveal the operation or activities of the federal government 'falls outside the ambit of the public interest that the FOIA was enacted to serve.'") (internal citation omitted), *aff'd*, No. 95CV01944, 1997 WL 411685 (D.C. Cir. June 19, 1997); *People for the American Way Found. v. NPS*, 503 F. Supp. 2d 284, 306-07 (D.D.C. 2007) (noting that "the public interest is not furthered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about the agency's own conduct") (citation omitted)).  This material was properly withheld under Exemption 6.

**(b)(6)-2** – identity of SCO or other Departmental employees:  OIP withheld the names and identifying information of Department personnel, including SCO employees, whose work with the SCO has not been publicly acknowledged.  Brinkmann Decl. ¶ 41.  Similar to the above, OIP sensibly concluded that "Department personnel involved with the SCO could become targets of harassing inquiries or unofficial questioning as to the scope of their involvement in matters

that are described in these records, whether or not they are currently employed by the Department," and that, by contrast, releasing these individuals' identities would not enhance public understanding of the Department's work ("particularly in light of the wealth of information that has been disclosed about the Department's SCO-related activities and the results of the SCO's investigation with the release of the redacted Report").  *Id.* ¶¶ 42-43.

**(b)(6)-3** – third-party individuals merely mentioned:  OIP withheld the names and identifying information of third parties who are merely mentioned in Mr. Weissmann's calendar entries; the individuals in this category are not parties of investigative interest.  Brinkmann Decl. ¶ 45.  As Ms. Brinkmann explains, "[s]imply being connected in some way with any activity related in any way to a law enforcement investigation carries a strong negative connotation and stigma," particularly "[g]iven the intense public interest surrounding the SCO's work as well as the public, elected official, and media scrutiny, which occur when any new fact is made public." *Id.* ¶ 46.  And again similar to the above, "disclosure of their identities would not significantly enhance the public's understanding of how the Department carries out its duties," which is particularly obvious given "the wealth of information that has been disclosed about the results of the SCO's investigation, and about charges that were pursued and criminal indictments that were issued by SCO against numerous individuals and entities." *Id.* ¶ 47.

**(b)(6)-4** – telephone numbers and/or addresses:  OIP withheld telephone numbers and conference call information of the Department, as well as that of third parties (and, in limited instances, third party addresses).  Brinkmann Decl. ¶ 48.  By contrast, OIP customarily releases publicly available Departmental telephone numbers, as well as non-Departmental telephone numbers and addresses already in the public domain.  *Id.*  Accordingly, the affected individuals

maintain a significant privacy interest in this non-public information, and release of this information would not shed any light on the Department's operations.  *Id.* ¶¶ 49-51.

**(b)(6)-5** – Mr. Weissmann's personal calendar entries:  these calendar entries consist entirely of Mr. Weissmann's calendar entries of a purely personal nature.  Brinkmann Decl. ¶ 52.  The propriety of these withholdings is self-evident.  "Given that these calendar entries pertain to information of a purely personal nature concerning Mr. Weissmann, and do not pertain in any way to official Department business, Mr. Weissmann retains a significant privacy interest in the information contained in these calendar entries."  *Id.* ¶ 53.  Mr. Weissmann's privacy interest in these materials is substantial and, in any event, the information was properly withheld under Exemption 6 because the public interest in disclosure is nonexistent.  *See Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) (noting that privacy interests always prevail in the Exemption 6 balancing analysis if there is no public interest in disclosure because "something, even a modest privacy interest, outweighs nothing every time").

**(b)(6)/7(C)-1** – third parties of investigative interest:  Unlike the individuals whose identities were withheld in the (b)(6)-3 category, this category of information that OIP withheld consists of the names and identifying information of third parties who were of investigative interest to the SCO, or were associated with organizations of investigative interest to the SCO.  Brinkmann Decl. ¶ 55.  This Court has explained that "[i]ndividuals involved in law enforcement investigations, 'even if they are not the subject of the investigation[,] have a substantial interest in seeing that their participation remains secret.'"  *Lewis-Bey v. DOJ*, 595 F. Supp. 2d 120, 135 (D.D.C. 2009) (quoting *Willis v. DOJ*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008)).  Consistent with that observation, OIP concluded that "[s]imply being linked with any law enforcement investigation carries a strong negative connotation and stigma" and that, more particularly here

- 16 -

"disclosure of the identities of these individuals would certainly subject them to unwarranted harassment and potential harm" in light of "the intense public interest surrounding the SCO's work as well as the public, elected official, and media scrutiny, which occur when any new fact is made public." Brinkmann Decl. ¶ 56. And here again, OIP correctly concluded that disclosure of this information "would not significantly enhance the public's understanding of how the Department carries out its duties." *Id.* ¶ 57.

*Criminal Division withholdings* – In addition to these categories of information withheld in the OIP calendars, the Criminal Division similarly withheld the names and identifying information of other third-party individuals and lower-level government employees under Exemption 6 (and for some withholdings, under Exemption 7(C) as well) in the Criminal Division calendars. Cunningham Decl. ¶¶ 23-25; Ex. 1 at 2. The Criminal Division's *Vaughn* index notes each instance in which third-party information was redacted, and the applicable exemption(s). *See, e.g.*, *id.* at 4 (multiple entries identifying "Third-Party information"). The *Vaughn* index also provides further information about particular entries. *See, e.g.*, *id.* at 5 ("a personal engagement matter"); *id.* at 11 ("meet and greet for section employee"). For reasons similar to those set forth above, this information was properly withheld: the third-party and otherwise personal information redacted from Mr. Weissmann's calendars would not shed any meaningful light in the Department's performance of its duties and its release would constitute a clearly unwarranted invasion of personal privacy. *See* Cunningham Decl. ¶ 25.

*FBI withholdings* – Finally, the FBI asserted Exemptions 6 and 7(C) to withhold certain information in both the Criminal and SCO calendars, on similar grounds. The bases for these withholdings are set forth in the Hardy Declaration and in both the OIP and Criminal Division

*Vaughn* indices (each of which delineate the particular withholdings that were taken by the FBI). The FBI has asserted Exemptions 6 and 7(C) over the following categories of information:

**Names and identifying information of FBI special agents, an attorney, and other professional staff** – The FBI determined that "FBI employees maintain substantial privacy interests in not having their identities disclosed," and that "there is no public interest to be served by disclosing [this information] to the general public." Hardy Decl. ¶ 12. Indeed, "[t]hese individuals are not political appointees or individuals in policy-making roles, and the disclosure of their identities would not significantly increase the public's understanding of the FBI's operations and activities." *Id.* The Hardy Declaration explains its analysis on this point, which is eminently logical. *Id.*; *see also Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) ("Generally, government employees and officials, especially law enforcement personnel, have a privacy interest in protecting their identities because disclosure could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs." (citation omitted)); *cf. O'Keefe v. Dep't of Defense*, 463 F. Supp. 2d 317, 326-27 (E.D.N.Y. 2006) (explaining that Department of Defense investigators' identities and personally identifiable information were properly withheld because "investigative personnel have significant privacy interests as they may be subject to harassment or embarrassment if their identities are disclosed" and "the probative value of this personally identifying information [was] nominal").

**Names and identifying information of third parties of investigative interest** – The FBI concluded that "these individuals maintain a substantial privacy interest in not having their identities disclosed" because "[b]eing linked with any law enforcement investigation carries a strong negative connotation and a stigma" and "[t]o release the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public

- 18 -

attention."  Hardy Decl. ¶ 13.  By contrast, "releasing these names and initials would contribute little to the public's understanding on how the FBI conducts its internal operations and investigations."  *Id.*  For these reasons—and those explained in discussion of similar withholdings in the (b)(6)/7(C)-1 and (b)(6)-3 categories discussed above—this information was properly withheld.  *See* pp. 15-17, *supra*.

**Names and identifying information of third parties merely mentioned** – The FBI "determined that these third parties have substantial privacy interests in not having their identities released in association with FBI law enforcement records" and that these interests outweighed any public interest in disclosure.  Hardy Decl. ¶ 14.  Again, this determination was plainly correct.  As Mr. Hardy explains, "[i]f the FBI were to disclose their names and other personal information, the disclosure would reveal that these third parties were connected in some way with an investigation conducted by the FBI," which would have "an extremely negative connotation."  *Id.*  For these reasons—and those explained in discussion of similar withholdings in the (b)(6)/7(C)-1 and (b)(6)-3 categories discussed above—this information was properly withheld.  *See* pp. 15-17, *supra*.

***

For all of the foregoing reasons, the Department is entitled to summary judgment on its Exemption 6 and 7(C) withholdings.

### C.   The Department Properly Withheld Information Pursuant to Exemption 7(A)

Exemption 7(A) protects records or information "compiled for law enforcement purposes" when disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).   "Exemption 7(A) reflects the Congress's recognition

that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" *Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). "To justify withholding, [an agency] must therefore demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" *Id.* (quoting *Mapother*, 3 F.3d at 1540). "Exemption 7(A) does not require a presently pending 'enforcement proceeding.' Rather . . . it is sufficient that the government's . . . investigation is likely to lead to such proceedings." *Ctr. for Nat. Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003).

As the Hardy Declaration explains, the SCO investigation closed earlier this year, but there remain active and ongoing matters that have not been acknowledged to the public in the redacted SCO report. Hardy Decl. ¶ 16. The information withheld by the FBI under Exemption 7(A) "would reveal the targets of these pending referred and transferred investigations" and "[t]he release of the names and related identifying information pertaining to investigative activities of third parties of on-going FBI investigations could result not only in the acknowledgment of the existence of an investigation, but also in the identification of suspects and thus jeopardize the investigation." *Id.* The FBI thus "determined that disclosure of the information, in the midst of multiple active and ongoing investigations, could reasonably be expected to interfere with these other investigations as well as any resulting prosecutions." *Id.* OIP withheld additional material for similar reasons. *See* Brinkmann Decl. ¶¶ 26-28 (noting, *inter alia*, that withheld "information relates both to pending criminal and national security investigations and prosecutions," that "[s]ome of these matters are still active and ongoing, and

have not been acknowledged to the public in the redacted SCO report" and that "[r]elease of this information would not only reveal the existence of investigations, but would also reveal the scope, limitations, and direction of the investigations and prosecutions, as well as the possible targets of these remaining investigations and prosecutions, thus jeopardizing the ongoing investigations and resulting prosecutions"). Similarly, as Mr. Cunningham explains, the Criminal Division withheld a single calendar entry under Exemption 7(A) "because this record was created for the purpose of federal law enforcement and relates to a pending or prospective DOJ enforcement proceeding." Cunningham Decl. ¶ 26.

In addition to the detail supplied in the Department's declarations, recent events underscore that the Department has not invoked Exemption 7(A) indiscriminately. Earlier today, the Department made a supplemental release to Plaintiff that, among other things, released some material previously withheld under Exemption 7(A) that has since been made public. Brinkmann Decl. ¶ 8. The Department has set forth why the remaining material was properly withheld under Exemption 7(A) and the Department is accordingly entitled to summary judgment on these withholdings.

### D.    The Department Properly Withheld Information Pursuant to Exemption 7(D)

Exemption 7(D) allows for the protection of records or information compiled for law enforcement purposes when disclosure "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source." 5 U.S.C. § 552 (b)(7)(D). "[A] source is confidential within the meaning of Exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Boyd v. Criminal Div. of U.S. Dep't of*

*Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007) (citation omitted).  As the Brinkmann Declaration explains, OIP withheld the identities of 42 individuals mentioned throughout Mr. Weissmann's calendar who provided information under either an express or implied assurance of confidentiality in these cases.  Brinkmann Decl. ¶ 60.  This information was thus properly withheld under Exemption 7(D).  Moreover, all of the information withheld under Exemption 7(D) was withheld under Exemption 7(E), as well as some combination of Exemptions 6, 7(C), and 7(A) and was also properly redacted on that basis.  *Id.* ¶ 62.

### E.    The Department Properly Withheld Information Pursuant to Exemption 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes [when release] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  This exemption affords categorical protection to techniques and procedures used in law enforcement investigations.  *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 168 (D.D.C. 2012); *but see Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (applying, without analysis, "risk of circumvention" standard to law enforcement techniques and procedures).  It protects techniques and procedures that are not well-known to the public as well as non-public details about the use of publicly-known techniques and procedures.  *Vazquez v. U.S. Dep't of Justice*, 887 F. Supp. 2d 114, 117 (D.D.C. 2012), *aff'd*, 2013 WL 6818207 (D.C. Cir. Dec. 18, 2013).

In this case, the Department is asserting Exemption 7(E) to withhold six categories of information:

First, OIP and the FBI asserted Exemption 7(E) to protect the investigative focus of multiple, specific investigations (and with respect to OIP's withholdings, prosecutions as well). Brinkmann Decl. ¶ 66; Hardy Decl. ¶ 21.  As the Brinkmann Declaration explains, "[r]evealing the broader investigative focus relating to interconnected investigations undertaken by the SCO, and other DOJ components, would reveal the scope of the Department's programs and the strategies pursued in carrying out its investigative and prosecutorial mandates."  Brinkmann Decl. ¶ 66; *accord* Hardy Decl. ¶ 21 (releasing this information "would reveal the scope of the FBI's programs and the strategies it plans to pursue in preventing and disrupting criminal activity").  "For example, if criminals or adversaries knew that the FBI was devoting investigative resources to a particular type of criminal activity in a specific geographic area and during a specific time period, they would be able to discern that their association with particular activities in that geographic area may cause them to attract the FBI's attention."  Hardy Decl. ¶ 21.

As the Declarations and *Vaughn* indices make clear, much of this information is protected by other exemptions as well.  "Exemptions 7(A) and 7(E) apply in tandem to protect the existence of the various SCO-related investigations and the investigative avenues the FBI chose to pursue for each investigation."  Hardy Decl. ¶ 21.  The FBI and OIP properly withheld these records under Exemption 7(E).  *See, e.g.*, *Soghoian v. DOJ*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) (information on investigative techniques to be used in conducting investigations properly withheld under Exemption 7(E)); *Blackwell v. FBI*, 680 F. Supp. 2d 79, 92 (D.D.C. 2010) (upholding FBI's withholding of information regarding procedures used in the forensic examination of computers on the ground that "disclosure potentially would aid others in circumventing future FBI investigations"), *aff'd*, 646 F.3d 37 (D.C. Cir. 2011); *Perrone v. FBI*,

- 23 -

908 F. Supp. 24, 28 (D.D.C. 1995) (concluding that a form was properly withheld under Exemption 7(E) because "disclosure of this information would help plaintiff or potential criminals predict future investigative actions by the FBI and consequently employ countermeasures to neutralize those techniques").

Second, the FBI invoked Exemption 7(E) to protect the location and identity of FBI units, squads and divisions that were involved in the investigations at issue.  Hardy Decl. ¶ 22.  As Mr. Hardy explains, "different FBI units, squads and divisions were and remain involved in these investigations," and releasing the units and field offices "would reveal the targets, the physical areas of interest in the investigations, and when taken together with the other locations if identified, could establish a pattern or 'mosaic' that identification of a single location would not."  *Id.*; *see also id.* (explaining that "withholding of units, squads and/or divisions involved is justifiable as well under a similar rationale" because, *inter alia*, releasing this information would reveal the FBI's investigative interest and lead criminals to employ countermeasures and otherwise adjust their behavior to avoid detection).  As Mr. Hardy further explains—and as the *Vaughn* indices underscore—the FBI also asserted Exemption 7(A) to withhold some of this material.  *Id.*

Third, the FBI invoked Exemption 7(E) to protect a "sensitive code word associated with a non-public undercover operation conducted by the FBI."  Hardy Decl. ¶ 23.  Mr. Hardy further explains that the code word has not been publicly released and "[i]f disclosed, it could have devastating operational consequences and would jeopardize the investigation, and potentially the lives of the undercover operatives."  *Id.*  The propriety of this withholding is self-evident.  *See, e.g.*, *Lewis-Bey*, 595 F. Supp. 2d at 138 (details of ATF electronic surveillance techniques, including the specific location where they were employed and specific timing, were exempt from

- 24 -

disclosure under Exemption (7)(E)).  The FBI also invoked Exemption 7(A) to protect this code word.  Hardy Decl. ¶ 23.

Fourth, OIP withheld certain information concerning the structure of the SCO, including the breakdown of units or divisions within the SCO.  Brinkmann Decl. ¶ 65.  As Ms. Brinkmann explains, because "these specialized SCO units focus on very specific crimes, prosecutions and/or intelligence-gathering activities, once identified within the context of the records at issue, the units' areas of expertise are revealed, and an individual would then understand exactly the interests of great importance to the SCO."  *Id.*  This information was properly withheld under Exemption 7(E) for the reasons set forth in the Brinkmann Declaration, which are similar to the rationales for withholding the location and identity of FBI units, squads, and divisions that were involved in the investigations.  *See* p. 24, *supra*; Brinkmann Decl. ¶ 65 ("The withholding of the structure of the SCO is consistent with the FBI's handling of similar information that would be revelatory of the FBI's structure and/or locations, and is important here as the SCO was staffed with FBI personnel and structured in a way similar to that of FBI's investigative units, squads, and divisions.").

Fifth, the Criminal Division similarly withheld a calendar entry that was "was created for the purpose of federal law enforcement and release of the information contained therein would disclose techniques, procedures and guidelines of enforcement investigations and prosecutions." Cunningham Decl. ¶ 28.

Sixth and finally, OIP also withheld the confidential source information protected by Exemption 7(D) discussed above under Exemption 7(E) as well because "the SCO's direct communication with the individuals is itself a law enforcement technique, disclosure of which could reasonably be expected to risk circumvention of the law."  Brinkmann Decl. ¶ 67.  As Ms.

- 25 -

Brinkmann further explains, this exemption is asserted here "to protect non-public details about publicly-known techniques (such as, as applicable here, the use of confidential sources) utilized by the SCO in this case." *Id.* ¶ 68.

### III.   The Department Released All Reasonably Segregable, Non-Exempt Information.

To meet its burden on segregability, the government must "show with 'reasonable specificity' why [] document[s] cannot be further segregated." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "To demonstrate that the withholding agency has disclosed all reasonably segregable material, the agency must supply 'a detailed justification for [its] decision that non-exempt material is not segregable.' The agency, however, is not required to provide so much detail that the exempt material effectively would be disclosed." *James Madison Project v. CIA*, 607 F. Supp. 2d 109, 130 (D.D.C. 2009) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1976)) (alteration in original). In evaluating segregability, the government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)).

The Department has met its burden here by providing the Brinkmann, Hardy, and Cunningham Declarations, which, respectively, address segregability specifically. *See* Brinkmann Decl. ¶ 69 (explaining that "every effort was made to provide plaintiff with all reasonably segregable non-exempt information in the responsive records" and "[r]elease of any additional information withheld by OIP could reasonably lead to the harms discussed" in the withholding analysis); Hardy Decl. ¶ 24 (similar); Cunningham Decl. ¶ 29 (similar). Moreover, with regard to the remaining withholdings, examination of the documents themselves—which

reflect surgical redactions across individual calendar entries and often across individual *lines*—confirms that the Department met its burden on segregability.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that the Court grant it summary judgment.

Dated:  October 7, 2019                    Respectfully submitted,

                                           HASHIM MOOPPAN
                                           Deputy Assistant Attorney General

                                           ELIZABETH J. SHAPIRO
                                           Deputy Director
                                           Federal Programs Branch

                                           /s/ Andrew M. Bernie
                                           ANDREW M. BERNIE (DC Bar No. 995376)
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, NW
                                           Washington, DC 20005
                                           Tel: (202) 616-8488 | Fax: (202) 616–8470
                                           andrew.m.bernie@usdoj.gov

                                           *Counsel for Defendant*